UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NEW STREAM COMMERCIAL FINANCE, LLC,

                   Plaintiff,                Docket No.: 07 Civ. 9432 (RMB)

                                             **AMENDED ANSWER**
        -against-                     **AND COUNTERCLAIMS**

HARVEY ELECTRONICS, INC.,

                   Defendant.
-----------------------------------------------------------------X

      Defendant HARVEY ELECTRONICS, INC. (hereinafter referred to as "Harvey"), by its attorneys, The Law Offices of Donald T. Rave, for its Amended Answer and Counterclaims states as follows:

      1.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "1".

      2.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "2", except admits that one or more of its representatives signed letters or agreements prepared by plaintiff, and avers that the terms and conditions of each are matters of law to be determined by this Honorable Court .

      3.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "3".

      4.     Denies knowledge or information sufficient to form a belief as to the truth of any of the allegations set forth in the paragraph of the Complaint designated "4".

5. Admits the allegations set forth in the paragraph of the Complaint designated "5".

6. Makes no response to the allegations set forth in the paragraphs of the Complaint designated "6" and avers that they are matters of law for this Honorable Court to determine.

7. Makes no response to the allegations set forth in the paragraphs of the Complaint designated "7" and avers that they are matters of law for this Honorable Court to determine.

8. In response to the allegations set forth in the paragraph of the Complaint designated "8", admits that Exhibit "A" is a true copy of a "Commitment for $9,000,000 Senior Secured Revolving Credit Facility" signed by the parties, and avers that the effects of the terms and conditions of same are matters of law to be determined by this Honorable Court.

9. Admits to the allegations set forth in the paragraph of the Complaint designated "9".

10. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "10" insofar as it alleges that defendant had any debt to plaintiff.

11. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "11".

12. In response to the allegations set forth in the paragraph of the Complaint designated "12", defendant admits that Exhibit "B" is a true copy of a "Commitment for

$7,500,000 Senior Secured Revolving Credit Facility" as signed by the parties, and avers that the effects of the terms and conditions of each are matters of law to be determined by this Honorable Court.

13.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "13".

14.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "13", except admits that it obtained financing from YA Global Investments LP, and denies knowledge or information sufficient to form a belief as to whether plaintiff approved of same.

15.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "15".

16.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "16".

17.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "17", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court .

18.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "18", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court .

19.  Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "19", and avers that the effects of the terms and conditions recited are

matters of law to be determined by this Honorable Court.

20. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "20", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court.

21. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "21", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court.

22. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "22", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court.

23. Denies each and every allegation set forth in the paragraph of the Complaint designated "23".

24. Denies knowledge or information sufficient to form a belief as to the truth of any of the allegations set forth in the paragraph of the Complaint designated "24".

25. Denies knowledge or information sufficient to form a belief as to the truth of any of the allegations set forth in the paragraph of the Complaint designated "25".

26. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "26", except admits that it received Exhibit "D".

27. Denies knowledge or information sufficient to form a belief as to the truth of any of the allegations set forth in the paragraph of the Complaint designated "27".

28. Denies the truth of each and every allegation set forth in the paragraph of the

Complaint designated "28", except admits that it received Exhibit "E", and denies knowledge or information sufficient to form a belief as to whether its outside counsel received same.

29.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "29", except admits that it received a letter dated September 28, 2007.

30.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "30", except admits that it received Exhibit "F".

31.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "31".

32.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "32".

33.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "33".

34.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "34".

35.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "35", and avers that the effects of written agreements are matters of law to be determined by this Honorable Court.

36.     Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "36".

37.     Denies the truth of each and every allegation set forth in the paragraph of the

Complaint designated "37".

38. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "38".

39. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "39".

40. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "40".

41. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "41".

42. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "42", and avers that the effects of the terms and conditions recited are matters of law to be determined by this Honorable Court.

43. Denies knowledge or information sufficient to form a belief as to the truth of any of the allegations set forth in the paragraph of the Complaint designated "43".

44. Denies the truth of each and every allegation set forth in the paragraph of the Complaint designated "44".

**AS AND FOR A FIRST, SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT ALLEGES THAT:**

45. The Complaint fails to state a claim upon which relief can be granted.

**AS AND FOR A SECOND, SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT ALLEGES THAT:**

46. Any recovery sought by plaintiff in this action is barred by the doctrine of unclean hands.

**AS AND FOR A THIRD, SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT ALLEGES THAT:**

47. By New Stream's improper conduct, it repudiated any agreement to provide financing to Harvey, requiring Harvey to mitigate its damages by obtaining financing elsewhere.

**AS AND FOR A FOURTH, SEPARATE AND COMPLETE AFFIRMATIVE DEFENSE, DEFENDANT ALLEGES THAT:**

48. As set forth at length in the counterclaim *infra*, the contracts and agreements upon which New Stream purports to bring suit were fraudulently induced and therefore void.

**AS AND FOR A FIFTH, SEPARATE AND COMPLETE, AFFIRMATIVE DEFENSE, DEFENDANT ALLEGES THAT:**

49. The contracts and agreements upon which New Stream brings suit are void for lack of mutuality of obligation.

**COUNTERCLAIMS**

As and for its Counterclaims Against Counterclaim Defendant New Stream Commercial Finance, LLC ("New Stream"), Counterclaim Plaintiff Harvey Electronics, Inc. ("Harvey") by its attorneys, The Law Offices of Donald T. Rave, alleges:

50. Counterclaim Plaintiff Harvey is a publicly traded New York corporation which in its current form or through a predecessor corporation has been in the consumer electronics business in the New York Metropolitan area for 80 years..

51. In or about March of 2007, Harvey approached Counterclaim Defendant New Stream about the possibility of providing debt financing for Harvey's planned acquisition of Myer-Emco, Inc., a privately owned retailer of consumer electronics operating in the suburban areas surrounding Washington, D.C.

52. New Stream represented to Harvey that it had over $700 million of capital, that it did not operate like a bank and would be flexible, prompt and responsive to Harvey's stated needs, which was to secure a prompt source of funding in order to complete the acquisition and pay off its then current senior lender, Webster Business Credit Corp.

53. Prior to April 20, 2007, and as requested by Newstream, Harvey provided a $35,000 deposit against expenses and New Stream and its outside counsel reviewed extensive documentation supplied by Harvey and Myer-Emco, Inc. and on April 16, 2007 New Stream advised Harvey that their credit committee had met and approved a deal to provide Harvey with a Senior Secured Credit Facility in the amount of $9,000,000 in connection with the acquisition of Myer-Emco.

54. New Stream's President represented to Harvey's Chairman that the loan would be closed promptly in order to meet Harvey's financing needs, and issued a commitment letter dated April 20, 2007 (Exhibit "A" to the Complaint).

55. As requested, Harvey promptly signed the commitment letter and provided all further due diligence information requested by New Stream and its counsel. It also made further advances to New Stream for its expenses.

56. In early June of 2007, when it became apparent that the Myer-Emco transaction was being delayed, New Stream offered to provide Harvey with a $7,500,000 Senior Secured Credit Facility on a stand-alone basis and not in connection with the acquisition.

57. Having already completed extensive due diligence and aware of Harvey's immediate need for the funds, New Stream promised to provide the needed financing on a "fire truck basis" so as to immediately pay off Webster Business Credit Corp. prior to July 1, 2007 and continue to have the working capital necessary to continue its business.

58. On June 18, 2007, in exchange for a $75,000 deposit against expenses made by Harvey, New Stream issued a second commitment letter to provide the $7,500,000 with the closing to occur prior to July 1, 2007.

59. Harvey and its counsel continued to provide New Stream with additional requested information and documentation, but New Stream continually refused to set a date for closing, despite being aware of the fact that Webster Business Credit Corp. was threatening to declare its loan in default and, thus, immediately due and payable which would force Harvey into bankruptcy.

60. That upon information and belief, at the time New Stream issued the June 18, 2007 commitment letter, and at the times it received deposits thereunder, it had no intention of making the loan to Harvey.

61. Frustrated by the lack of progress, Harvey's Chief Executive Officer, Michael E. Recca, traveled to New Stream's headquarters in Ridgefield, CT and met with New Stream's President, James McKay. Mr. Recca asked point blank whether New Stream was prepared to close the loan by August 1, 2007. McKay's response was that the financial information supplied by Harvey looked good, but that he needed an additional deposit of $65,000 to "refill the fire truck" to cover legal fees whereupon he would instruct New Stream's lawyers to immediately resume work to achieve a rapid closing.

62. In reliance upon this representation, Recca agreed to make the additional deposit and on Monday, July 30, 2007, Harvey wire transferred $65,000 to New Stream's account.

63. That, upon information and belief, contrary to the representation made by McKay, at the time New Stream solicited the additional $65,000 deposit, it had no intention of actually making the loan.

64. That upon information and belief, and contrary to representations by New Stream, after the payment New Stream's counsel never received instruction from New Stream to resume work to close the deal.

65. That after the deposit was made, New Stream personnel became unavailable for calls from Harvey personnel and, upon information and belief, even from their own counsel.

66. That, upon information and belief, New Stream personnel were in contact with Harvey's current lender, Webster Business Credit Corp., and encouraged them to force Harvey into bankruptcy so that New Stream could provide more lucrative debtor in possession financing.

67. When Harvey became aware of this conduct by New Stream, it was forced to secure other financing in order to avoid bankruptcy and mitigate the damages arising from New Stream's conduct.

68. That the terms of that financing required, *inter alia*, that Harvey issue warrants to purchase, for a nominal price, 20% of its total shares outstanding on a fully diluted basis.

**AS AND FOR A FIRST COUNTERCLAIM**
**BREACH OF CONTRACT**
**(incorporating all previous allegations):**

69. By its conduct, New Stream breached its implied covenant of good faith and fair dealing with respect to the purportedly exclusive lending contracts it entered into with Harvey, causing Harvey to suffer damages in a sum as yet to be determined, but in no event less than $10,000,000.

**AS AND FOR A SECOND COUNTERCLAIM**
**BREACH OF CONTRACT**
**(incorporating all previous allegations):**

70. Harvey complied with all applicable conditions precedent to the June 18, 2007 commitment letter and New Stream breached its obligations thereunder by failing to proceed to closing in a timely manner, causing Harvey to suffer damages in a sum yet to be determined, but in no event less than $10,000,000.

### AS AND FOR A THIRD COUNTERCLAIM
### UNJUST ENRICHMENT
### (incorporating all previous allegations):

71. Harvey conferred substantial benefits upon New Stream by making $175,000 in "Underwriting Deposits" without New Stream providing any services or benefits in return.

72. Accordingly, the retention of such benefits by Counterclaim Defendant New Stream without return to Counterclaim Plaintiff Harvey would be unjust.

### AS AND FOR A FOURTH COUNTERCLAIM
### FRAUD
### (incorporating all previous allegations):

73. That upon information and belief, when New Stream induced Harvey to sign the June 18, 2007 $7,500,000 loan commitment, which prohibited Harvey from negotiation with any other lenders, it never intended to make the loan.

74. That upon information and belief, when New Stream solicited and received the $75,000 underwriting deposit on June 20, 2007, it never intended to make the loan.

75. That upon information and belief, when New Stream solicited and received the $65,000 expense deposit on July 30, 2007, it never intended to make the loan.

76. That upon information and belief, all of the aforementioned misrepresentations were made by New Stream with the intent to deceive Harvey.

77. Harvey justifiably relied upon New Stream's repeated false representations that it would make the loan to its detriment, causing Harvey to suffer damages in excess of $10,000,000.

## AS AND FOR A FIFTH COUNTERCLAIM
## ANTICIPATORY BREACH
### (incorporating all previous allegations):

78. When it became apparent to Harvey that New Stream was not going to perform its obligations, Harvey took immediate steps to mitigate its damages by obtaining substitute financing.

79. As a result thereof, Harvey was caused to suffer damages in an amount to be determined at trial, but in no event less than $10,000,000.

**WHEREFORE,** Harvey respectfully demands that the Complaint against it be dismissed and that it have judgment against Counterclaim Defendant New Stream Commercial Finance, LLC as follows:

A. On the First Counterclaim, for judgment against New Stream in an amount to be determined at trial, but in no event less than $10,000,000;

B. On the Second Counterclaim, for judgment against New Stream in an amount to be determined at trial, but in no event less than $10,000,000;

  C. On the Third Counterclaim for judgment against New Stream in the amount of $175,000;

  D. On the Fourth Counterclaim for judgment against New Stream in an amount to be proven at trial, but in no event less than $10,000,000;

  E. On the Fifth Counterclaim for judgment against New Stream in an amount to be proven at trial, but in no event less than $10,000,000;

  F. For judgment against New Stream for the costs and expenses of this action, including reasonable attorneys' fees and for such other and further relief which, to the Court, seems just and proper.

Dated: Locust Valley, New York
   December 17, 2007

        LAW OFFICES OF DONALD T. RAVE
        Attorneys for Defendant and Counterclaim Plaintiff


        By <u>Donald T. Rave, Jr.</u>
         A Member of the Firm
        11 The Plaza
        Locust Valley, New York
        516-671-1295
        DTRAVEJR@RAVELAW.COM


To: Hahn & Hessen LLP
   Attorneys for Plaintiff
   and Counterclaim Defendant
   488 Madison Avenue
   New York, New York 10022
   212-478-7200

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

>Hahn & Hessen LLP
>Attorneys for Plaintiff
>and Counterclaim Defendant
>488 Madison Avenue
>New York, New York 10022

>LAW OFFICES OF DONALD T. RAVE
>Attorneys for Defendant and Counterclaim Plaintiff

>By <u>Donald T. Rave, Jr.</u>
>    A Member of the Firm
>11 The Plaza
>Locust Valley, New York
>516-671-1295
>DTRAVEJR@RAVELAW.COM

# VERIFICATION

STATE OF NEW YORK )
                              ) ss.:
COUNTY OF NASSAU )

      DONALD T. RAVE, JR., being duly sworn, deposes and says:

      1.    I am a member of the bar of this Honorable Court and a member of the firm at the Law Offices of Donald T. Rave, counsel for the defendant/counterclaim plaintiff, Harvey Electronics, Inc.

      2.    I have read the foregoing Amended Answer and Counterclaims and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be upon information and belief, and as to those matters, I believe it to be true.

      3.    The reason this verification is made by me and not by defendant/counterclaim plaintiff is the fact that defendant/counterclaim plaintiff does not maintain an office within the county in which your deponent maintains his office.

      4.    The grounds of my belief as to matters not stated upon my own knowledge are the result of conversations with our client; review of its files; correspondence and conversations with counsel for the plaintiff and independent investigation.

                                                                         Donald T. Rave, Jr.

Sworn to before me this
17th day of December, 2007

VIRGINIA RUSSO
Notary Public, State of New York
No. 4606875
Qualified in Nassau County
Commission Expires on April 30, 2011